UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

HAROLD CORPORAN, HAMIEL PEREZ, CELIA
SOSA, MIGUEL MANAYA, JOANNA BUIZA,
LORELEY RODRIGUEZ, JERRY GREEN, KHALID
ABDUL-WAHHAB, ADELAIDA DIAZ, ANA MARTINEZ,
PEDRO MASSO-DIAZ, MIGUEL VASQUEZ, JR.,
and JAMILA RIVERA,

                              **Plaintiffs,**

-against-                                                05-CV-1340

CITY OF BINGHAMTON; RICHARD A. BUCCI,
Individually and in his Official Capacity
as Mayor; JOHN BUTLER, Binghamton Chief of
Police; LISA ZIKUSKI, Assistant Police
Chief; CAPTAIN DUANE SHAFFER; SGT. PATRICK
McCORMICK; SGT. LARRY HENDRICKSON; SGT.
DONALD BURKE; JAMES MAERKL; CHRIS BONANNO;
JESSICA A. GRIFFIN; PATRICK SINE; STEVE
WARD; DANIEL SEIDEL; JOHN SPANO; THOMAS
SKINNER; MATTHEW LEWIS; CHRISTOPHER
GOVERNANTI; NATE CARO; ROBERT KNEER; JOHN
CHAPMAN; ALFANSO PERNA; DAVID BAER; JAMIE
KORBA; DAMIEN MARONEY; and JOHN AND JANE DOE,
Police Officers, Individually and in their Official Capacities,

                              **Defendants.**
_____

**THOMAS J. McAVOY,**
**Senior United States District Judge**

**DECISION & ORDER**

**I.  INTRODUCTION**

       This action was brought by thirteen plaintiffs pursuant to 42 U.S.C. §§ 1981 and 1983, and

1

state common law, alleging that they were subjected to racially-motivated disparate treatment by various members of the Binghamton Police Department that resulted in violations of their constitutional and state common law rights. The action is brought against various Binghamton police officers and the Chief of Police, John Butler, the former Mayor of Binghamton, Richard A. Bucci, and the City of Binghamton. Plaintiffs seek monetary damages and declaratory and injunctive relief on their federal claims, as well as monetary damages on their state law claims.

Defendants have moved pursuant to Rules 20 and 21 of the Federal Rules of Civil Procedure to dismiss or sever the plaintiffs' claims into five separate actions (based on five incidents separately identified in the Complaint) and, pursuant to Rule 42(b) of the Federal Rules of Civil Procedure to bifurcate the plaintiffs' § 1983 claims against the individual defendants from the § 1983 claims against the City of Binghamton. The plaintiffs do not oppose the motion to bifurcate, but they do oppose dismissal or severance of any claims.

## II. BACKGROUND

The plaintiffs in this action are thirteen black and Hispanic individuals who claim to have been treated in a racially discriminatory manner by officers of the Binghamton Police Department. The following is a brief summary of the various incidents alleged in the Complaint. The incidents are separated in a fashion coinciding with the separation provided in the Complaint. See Compl. ¶¶ 28-89.[1]

**Incident 1: "Sai Bless Inn I incident"**

Plaintiffs Corporan, Sosa, and Minaya were involved in a series of incidents at the Sai Bless

---

[1] The Complaint does not use the same headings as used in the text, but rather separates the incidents by the plaintiffs involved in each of the 5 incidents.

Inn on February 20, 2005.  Compl. ¶ 28.  In this regard, these plaintiffs allege that while they were leaving the Inn (separately, not as a group), there was a series of confrontations between them and a group of police officers on the scene, including Sergeants Burke and Hendrickson, and Officers Griffin, Bonanno, and Jane Doe.  Id. at ¶¶ 29-46.  Captain Shaffer and Officers Ward, Donahue, and Buemi were also present, but off-duty at the time.  Id. at ¶ 29.  During these confrontations, the plaintiffs allege that they were subjected to verbal abuse and excessive force.  Id. at ¶¶ 31-45.  All three of the plaintiffs were ultimately arrested and charged with Riot in the Second Degree.  Id. at ¶¶ 33, 40, 46.  Plaintiffs further allege that the District Attorney later refused to prosecute any of these three charges.  Id. at ¶¶ 33, 40, 46.

**Incident 2: "Sai Bless Inn II incident"**

Plaintiff Perez was also confronted by Sergeant Hendrickson inside the lobby of the Sai Bless Inn on February 20, 2005.  Id. at ¶¶ 47-48.  He, like the other plaintiffs who were at the Inn that day, alleges that he was behaving lawfully when confronted, and that he was subjected to verbal abuse and excessive force.  Id. at ¶¶ 48-51.  He was arrested and charged with Harassment in the Second Degree.  Id. at ¶ 52.

**Incident 3: "May 7, 2005 Sai Bless Inn incident"**

Another incident occurred at the Sai Bless Inn on May 7, 2005.  Id. at ¶ 54.  During that incident, plaintiffs Buiza and Rodriguez allege that they were leaving the Inn when they were arrested and subjected to excessive force by a group of police officers including Captain Shaffer, and Officers McCormick, Ward, Governanti, Kneer, Lewis, Korba, Baer, Chapman, and Sine.  Id. at ¶¶ 55-59.

**Incident 4: "Green Incident"**

Plaintiff Jerry Green's claims result from an incident that took place in downtown Binghamton on May 8, 2005. Id. at ¶ 60. He claims that he was acting lawfully when he was accosted, beaten, verbally abused, and arrested by a group of police officers who then deprived him of medical treatment. Id. at ¶¶ 61-65. It appears from the Complaint that the only officer present whose name is known to Green was Defendant Maerkl, though there were other officers involved whose names he claims will become known through discovery. Id. at ¶¶ 64, 66.

**Incident 5: "July 4th Incident"**

The final incident took place on July 4, 2005 outside the homes of some of the plaintiffs. Id. at ¶ 68. The plaintiffs involved in this incident were Abdul-Wahhab, Diaz, Martinez, Masso-Diaz, Vasquez, and Rivera. During this incident, the plaintiffs claim to have been lawfully watching fireworks when they were approached and ordered to disperse by a group of police officers including Captain Shaffer, Assistant Police Chief Zikuski, and Officers Bonanno, Spano, Martino, Governanti, and Skinner. Id. at ¶¶ 68-69, 86. The plaintiffs allege that the police then verbally abused, beat, handcuffed, and arrested them, then brought them to the police station where they were kept in handcuffs for extended periods of time. Id. at ¶¶ 74-85.

All of the plaintiffs involved in all of the incidents described allege that they were falsely arrested, that they were singled out for verbal and physical abuse because of their skin color and ethnicity, and that white citizens in similar circumstances would not have been treated in the same way. Id. at ¶ 87. They assert causes of action pursuant to 42 U.S.C. §§ 1981 and 1983, and state common law. Id. at ¶¶ 116-127.

## III. DISCUSSION

### A. Dismissal or Severance of Claims

Defendants move to sever the claims of the various plaintiffs in accordance with the five incidents identified above. Plaintiffs have opposed this portion of the motion.

#### 1. Standard

Rule 20 of the Federal Rules of Civil Procedure governs the permissive joinder of parties. For defendants to be properly joined in an action, the claims against them must "aris[e] out of the same transaction, occurrence, or series of transactions and occurrences," and there must be some "question of law or fact common to all these persons [that] will arise in the action." Fed. R. Civ. P. 20(a). If the trial court finds that parties have been improperly joined under Rule 20, it can, in its discretion, choose to dismiss certain parties or claims, sever certain parties or claims, or order separate trials as it deems appropriate or necessary. Fed. R. Civ. P. 20(b), 21, 42(b); see Gonzales v. City of Schenectady, 2001 WL at 1217224, at * 10 (N.D.N.Y. Sept. 17, 2001)(McAvoy, J.).[2] However, Rule 21 provides that "[m]isjoinder of parties is not ground for dismissal of an action." Fed. R. Civ. P. 21. Because defendants seek dismissal of the entire action, or, in the alternative,

---

[2] In Gonzalez, this Court held:

> Rule 21 of the Federal Rules of Civil Procedure allows for the severance of "any claims," and Rule 42(b) provides that a court may order a separate trial of any claim "in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy," Fed. R. Civ. P. 42(b). The distinction between these two rules is that "[s]eparate trials usually will result in one judgment, but severed claims become entirely independent actions to be tried, and judgment entered thereon, independently." 9 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure: Civil 2d* § 2387.
>
> Trial courts have broad discretion to employ either of these rules, which are generally determined using the same standard. Wausau Bus. Ins. Co. v. Turner Const. Co., 2001 WL 460928, at [*]2 (S.D.N.Y. May 2, 2001)(citing New York v. Hendrickson Bros., Inc., 840 F.2d 1065 (2d Cir.), *cert. denied,* 488 U.S. 848 (1988)); see also Smith v. Lightning Bolt Productions, Inc., 861 F.2d 363, 370 (2d Cir. 1988).

severance of separately identifiable matters, and because Rule 21 prohibits of the dismissal of the entire action based upon misjoinder, the only viable option on this motion is severance.

The Court has broad discretion in determining whether to grant or deny a motion for severance. Smith v. Lightning Bolt Prod., Inc., 861 F.2d 363, 370 (2d Cir. 1988). In considering such a motion, the Court must evaluate whether the severance will further the aims of justice and fairness. In re Merrill Lynch & Co., Inc. Research Reports Securities Litig., 214 F.R.D. 152, 155 (S.D.N.Y. 2003). In addition, the Court should consider whether the severance of claims will promote judicial economy, while avoiding the cumulative presentation of evidence. Id.

The following factors serve as guidelines in the disposition of such motions: 1) whether the claims arise out of the same transaction or occurrence; 2) whether the claims present some common questions as to law or fact; 3) whether settlement of the claims or judicial economy would be facilitated; 4) whether prejudice would be avoided if severance were granted; and 5) whether different witnesses and documentary proof are required for separate claims. Gonzales, 2001 WL at 1217224, at * 10 (citing Morris v. Northrop Grumman Corp., 37 F. Supp.2d 556, 580 (E.D.N.Y. 1999)); Wausau Bus. Ins. Co. v. Turner Constr. Co., 204 F.R.D. 248, 250 (S.D.N.Y. 2001). To grant severance requires the presence of only one of these conditions. Gonzales, 2001 WL at 1217224, at * 10; Lewis v. Triborough Bridge & Tunnel Authority, 2000 WL 423517, at *2 (S.D.N.Y. April 19, 2000). Of paramount consideration is whether one of the parties to the litigation will suffer a substantial hardship as a result of either severance or joinder. The Court must balance the factors of benefit and prejudice to arrive at both a fair and equitable conclusion. New York v. Hendrickson Bros., Inc., 840 F.2d 1065, 1082 (2d Cir. 1988).

### 2. Application

In support of their motion to sever, the defendants argue that the various parties to this action have been improperly joined, and that there exist, in reality, five distinct actions that should be tried separately. The defendants assert that, because this action arises from five distinct transactions or occurrences, and because there is no question of law or fact common to all five of those transactions and occurrences, the claims arising from each of the five transactions should be severed and tried separately. Defendants also claim that they would be unfairly prejudiced if the case went to trial as one action.

The plaintiffs, in opposition, claim that there is a question of law common to all of their claims, namely, whether a racial motivation was behind their arrests and treatment by the defendants. As such, the plaintiffs contend that if their claims are severed, there will be substantial relitigation of the same issues relating to whether there are racially motivated and/or disparate policies within the Binghamton Police Department that led to the different incidents alleged in the Complaint. To avoid duplicative litigation, the plaintiffs urge, the motion to sever should be denied.

Turning to the first factor, the Court finds that both the Sai Bless Inn I incident and the Sai Bless Inn II incident arose from the same transaction or occurrence. Both incidents arose from police response to the situation confronted at the Sai Bless Inn on February 20, 2005 as patrons were leaving a party. The fact that one series of confrontations occurred outside the building and the other inside the building does not differentiate the incidents in such a way that it could be said they constitute separate transactions or occurrences. Further, the same police officer was involved in both incidents, and it is presumed that he was responding to the same situation when he interacted with the plaintiffs both inside and outside the building. For sake of clarity, the Court will refer to

the Sai Bless Inn I incident and Sai Bless Inn II incident collectively as the "February 20, 2005 Sai Bless Inn incident."

The Court further concludes that the May 7, 2005 Sai Bless Inn incident, the Green Incident, and the July 4th Incident arose from transactions and occurrences that were separate from each other, and which were separate and apart from the February 20, 2005 Sai Bless Inn incident. These four incidents took place at different times over a span of five months and involved many different defendants. There is little that ties the incidents together, and the Court finds that the first factor weighs in favor of severance of the four separate occurrences.

As for the second factor, although there may be a common question of law presented, there are no common questions of fact at issue here except for the common factual questions forming the basis of the February 20, 2005 Sai Bless Inn incident. The plaintiffs' claims all arise from four different factual transactions with very little overlap, even in time or location. This also speaks to the fifth factor, whether different witnesses or documentary proof will be required for claims arising from the four separate transactions. It seems likely that, while there may be some overlap of witnesses called to testify about the policies present in the Binghamton Police Department, the vast majority of witnesses and documentary proof will differ among the groups of plaintiffs, depending on in which of the four transactions they were involved. The Court finds that the second and fifth factors weigh in favor of severance to allow for four separate trials.

Looking at the third factor, it is unclear at this stage of the litigation whether settlement or judicial economy will be facilitated by severance. This factor weighs neither for nor against severance.

Looking at the fourth factor, it seems likely that the defendants would suffer some prejudice

if the claims were all tried together.  As the defendants assert in their Memorandum of Law and Reply in support of this motion, the likelihood of juror confusion if this case were tried as a whole is great due to the large number of persons involved and the various different incidents being contested.  Further, some defendants may suffer spill-over prejudice if the jury concludes that other defendants, on different dates, acted in manner that violated any of the plaintiffs' rights. Accordingly, this factor weighs in favor of severance of the four occurrences.

Having weighed and balanced all of the factors, the Court finds that the Sai Bless Inn I incident and Sai Bless Inn II incident need not be severed and can be tried together as one incident occurring on February 20, 2005.  The Court further finds that the February 20, 2005 Sai Bless Inn incident should be severed from the May 7, 2005 Sai Bless Inn incident, the Green Incident, and the July 4th Incident, and that each of these incidents should be severed from each other.

Therefore, Defendants' motion to sever the claims identified above is **GRANTED** as follows. There shall be four separate trials.  These trials shall involve:  (1)  all claims arising from the February 20, 2005 Sai Bless Inn incident; (2) all claims arising from the May 7, 2005 Sai Bless Inn incident;  (3) all claims arising from the Green Incident; and (4) all claims arising from the July 4th Incident.   From this point forward the Court and the parties shall treat each of the severed matters as if filed as separate actions.  To more properly manage the four severed matters, Magistrate Judge Peebles should give the parties separate Pre-Trial Scheduling Orders for each of the separate matters.  If any of the parties determine to make a motion involving any of the severed matters, the motion shall be made *only* regarding claims *in that matter*. In this regard, the Court will not entertain a motion that addresses claims arising in more than one of the four matters.

**B. Bifurcation**

Next, Defendants seek to bifurcate the Section 1983 claims against the individual defendants from the Section 1983 claims against the City of Binghamton.  Bifurcation "may be appropriate where, for example, the litigation of the first issue might eliminate the need to litigate the second issue, or where one party will be prejudiced by evidence presented against another party." Amato v. City of Saratoga Springs, 170 F.3d 311, 316 (2d Cir. 1999).  The party moving for a bifurcation has the burden of showing that bifurcation is necessary "to prevent prejudice or confusion, and to serve the ends of justice." Gonzales, 2001 WL at 1217224, at * 11 (quoting Buscemi v. Pepsico, Inc., 736 F. Supp. 1267, 1271 (S.D.N.Y. 1990)).

Defendants have moved for bifurcation on the grounds that, if the plaintiffs fail on their claims against the individual defendants, the Section 1983 claims brought against the City of Binghamton will not need to be reached.  Plaintiffs have conceded this point and have indicated that the "the interests of justice are best served by bifurcation, with the cases being tried 'back to back to the same jury.'" Plf. Mem. L. p. 5 (quoting Gonzales, 2001 WL at 1217224, at * 12).

The Court understands the motion to request bifurcation of Section 1983 claims brought against defendants sued in their individual capacities from the Section 1983 claims brought against the City of Binghamton and the individual defendants in their official capacities. See Mathie v. Fries, 121 F.3d 808, 818 (2d Cir. 1997)("A claim against a government officer in his official capacity is, and should be treated as, a claim against the entity that employs the officer. . . .")(citing Kentucky v. Graham, 473 U.S. 159, 165-66 (1985)); see Riley v. Town of Bethlehem,44 F. Supp.2d 451, 465 (N.D.N.Y. 1999)("It is apodictic that claims against an individual in his official capacity are to be treated as claims against the municipality.").  Based on Plaintiffs' consent, and a

determination that judicial economy will be served by bifurcation, Defendants' motion to bifurcate the trial of the Section 1983 claims is **GRANTED.**  If there is a need to try any of the Section 1983 claims against the City of Binghamton in any of the four severed matters, the claims shall be tried back to back to the same jury.

## IV.  CONCLUSION

For the reasons stated above, the defendants' motion to sever the plaintiffs' claims is **GRANTED** as follows.  There shall be four separate trials.  These trials shall involve:  (1)  all claims arising from the February 20, 2005 Sai Bless Inn incident; (2) all claims arising from the May 7, 2005 Sai Bless Inn incident;  (3) all claims arising from the Green Incident; and (4) all claims arising from the July 4th Incident.

Defendants' motion to bifurcate the individual capacity Section 1983 claims from the Section 1983 claims against the City of Binghamton (including the official capacity claims against the individual defendants) is **GRANTED.**  If there is a need to try any of the Section 1983 claims against the City of Binghamton in any of the four severed matters, the claims shall be tried back to back to the same jury.

**IT IS SO ORDERED**

DATED:  October 16, 2006

*Thomas J. McAvoy*
Thomas J. McAvoy
Senior, U.S. District Judge